UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SKYLINE RISK MANAGEMENT, INC.,

                                    Plaintiff,

            -against-

YANNIS LEGAKIS et al.,

                                    Defendants.

---

20-cv-8395 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

    Almost four years ago, Plaintiff Skyline Risk Management, Inc. ("Skyline"), brought this case against Yannis Legakis and his company, Laconic Risk Solutions (collectively, "Legakis"). Among other things, Skyline alleged that Legakis, who used to work with Skyline, stole its clients and property when he left. Now, Legakis moves for summary judgment. For the reasons that follow, that motion is granted.

## BACKGROUND

### I.    Factual Background

    For this motion, the Court takes the facts as Legakis gives them. Under Local Civil Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth … by the moving party will be deemed to be admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Skyline did not file *any* statement of material facts. Instead, it submitted only a declaration from its principal, George Menexas, with a few documents attached. Dkt. 235. That declaration does not "specifically controvert[] by a correspondingly numbered paragraph" the facts in Legakis's statement. Local Civ. R. 56.1(c). Instead, it contains various scattered assertions (many of which are legal conclusions) that are almost entirely unsupported by record citations. Dkt. 235. Meanwhile, Skyline's brief does not even contain a facts section. Dkt. 234. And its "preliminary statement" section, which lists some facts, contains a grand total of two record citations (both of which reference evidence produced by Legakis) and one citation to an email in the complaint. *Id.* at 4–6. Those are the only record citations in Skyline's entire brief. As such, the Court deems admitted the facts outlined in Legakis's statement, as they are well-supported by record citations and not specifically controverted by Skyline. *See T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).[1]

---

[1] To the extent that the Court has discretion to act otherwise, it declines to do so. Skyline has been on notice of its failure to comply with Rule 56.1(c) since Legakis noted the issue in his reply brief on January 18, 2024. Dkt. 241 at 1. Yet Skyline has not requested an opportunity to file a counterstatement. In addition, and as detailed below, Skyline has been given numerous extensions (including an extension

Now on to those facts: This case stems from a death and the subsequent dissolution of a business relationship. Skyline is an insurance brokerage that serves the construction industry. Back in 2014, Skyline's then president, Anthony Kammas, brought on his friend, Yannis Legakis, to develop the company's bonding business. Dkt. 224 ¶¶ 2, 4. There was no written employment agreement between Legakis and Skyline. ¶ 7. Instead, Legakis was to act as an independent contractor, and Skyline and Legakis would split Legakis's commissions. ¶ 6. Legakis and Kammas agreed that Legakis could take his clients with him if he left Skyline. ¶ 8. In addition to developing Skyline's bonding business, Legakis also wrote some insurance policies for Skyline clients during his time with the company. ¶ 10.

When Kammas passed away in 2020, Legakis decided to leave Skyline. ¶ 11. On July 14, 2020, Legakis and Menexas met to discuss Legakis's departure. *Id.* The same day, Legakis sent a follow-up email. ¶ 12. He explained that, as it related to the bonding business, he would "finish out the rest of the week" and then "start to move accounts over." *Id.* As it related to the insurance business, Legakis wrote that he would "keep [his] book with Skyline, to be paid at the same payout as before," contingent on a specific Skyline employee or a suitable replacement handling his accounts. ¶ 12. Legakis also told Menexas that he had a laptop that Skyline had given him years ago, which he would like to keep. *Id.* Legakis offered to pay for the laptop. *Id.* Finally, Legakis said that because he and Skyline were "still working together," he'd like to have access to his insurance files and email. *Id.* Legakis asked Menexas to "let [him] know" if Skyline was going to "shut [him] off." *Id.* If that was the case, Legakis proposed setting up his account files in a separate Dropbox account. *Id.*

Menexas did not respond to that email or to several follow-up emails that Legakis sent over the next two months. ¶¶ 13–16. When Menexas finally responded, he said nothing about Legakis's decision to take his bonding clients with him, the laptop, or access to Skyline's system. ¶ 20. Instead, Menexas wrote only that it was Legakis's "choice to quit" and that he "w[ould] be paid in the same manner [he was] paid in the past." *Id.* As of August 30, 2020, just about a month before this lawsuit was brought, Skyline had not disabled Legakis's access to Skyline's computer system. ¶ 21. Nor did Menexas ever tell Legakis that he could not access the Skyline system. *Id.*

## II. Procedural Background

Skyline brought this lawsuit against Legakis and his company, Laconic Risk Solutions, on October 7, 2020, alleging that Legakis stole Skyline's clients and property and defamed it. Dkt. 1. On December 28, Legakis filed an answer as well as counterclaims for unpaid

---

to file its brief opposing the present motion), stretching this litigation out over approximately four years. Dkts. 59, 119, 145, 157, 160, 183, 229. It has also repeatedly disregarded the Court's orders without explanation. Dkts. 188, 216, 226, 233, 237. The Court declines to further prolong this litigation because of Skyline's continued noncompliance.

commissions and for continuing to use Legakis's name and image on Skyline's website. Dkt. 9. Skyline amended its complaint twice. Dkts. 56, 132.

This litigation proceeded at a snail's pace. Between 2021 and 2023, Skyline requested six discovery extensions, which were granted in full or in part. Dkts. 59, 119, 145, 157, 160, 165. Apparently, more than 500 days into litigation, Skyline still had not served Legakis with any discovery requests. Dkt. 172-1 at 6.

In January 2023, Menexas failed to appear for his deposition. Dkt. 165. So the magistrate judge overseeing discovery granted Legakis's motion to compel Menexas's deposition. *Id.* Menexas again failed to appear, so the magistrate judge granted Legakis's motion for sanctions. Dkt. 195. In addition, on the date Skyline had scheduled to take Legakis's deposition, Skyline didn't show up. Dkt. 172-1 at 7. Legakis waited for forty-five minutes without any word from Skyline. *Id.* As a result, it appears (from the summary-judgment submissions) that Skyline never took Legakis's deposition.

But the sanctions did not scare Skyline straight. Instead, Skyline continued to disregard this Court's orders. Without explanation, Skyline blew past the deadline for paying the sanctions. Dkt. 226. This Court set another deadline and then extended that deadline at Skyline's request. *Id.*; Dkt. 230. Skyline blew past the new deadline. Dkt. 233. After Skyline represented that it did not have the funds to pay the sanctions, this Court ordered Skyline to submit documentation of that fact. Dkt. 236. Again, Skyline missed the deadline, although the sanctions were eventually paid. Dkts. 237, 238.

The second amended complaint lists twelve causes of action. Dkt. 132 at 19–30. But on October 26, 2023, Skyline withdrew its trade-secrets claims. *See* Dkt. 234 at 5. And on November 17, 2023, Skyline advised Legakis that it was also withdrawing its unjust-enrichment claim. Dkt. 222-4; Dkt. 234 at 5.

Although there is nothing abnormal about issues crystallizing as litigation progresses, the Court notes that the contours of Skyline's alleged injuries have remained elusive throughout this case and remain so even now, almost four years in. In its opposition brief, for example, Skyline says its right to relief arises from the fact that Legakis took steps to leave Skyline while still working with Skyline, such as "copying and/or ret[aining] Skyline computer files to which he was not entitled and [preparing] Broker of Record letters, so that by the [time he left,] he had all the information necessary to steal the bonding business clients of Skyline." Dkt. 234 at 5. But in his deposition, Menexas admitted that he had no issue with clients moving over to Legakis "after Legakis gave [Skyline] his notice on [July] 15th." Dkt. 222-5 at 286:2–11. Menexas instead describes Legakis's misconduct as purposely delaying bonds "to manipulate [them] so they came to fruition after [he left Skyline]." *Id.* Yet there's no reference to bonds being purposely delayed in Skyline's brief.

Legakis now moves for summary judgment on all remaining claims against him.[2] Neither party has moved for summary judgment on Legakis's counterclaims.

## LEGAL STANDARDS

"Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Davis v. Blige*, 505 F.3d 90, 97 (2d Cir. 2007). The movant "bears the burden of establishing that no genuine issue of material fact exists." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). But "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Id.*

Because the failure to respond to a statement of material facts means that the court accepts the moving party's statement as "uncontested," "[i]n the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y.*, 584 F.3d at 418.

## DISCUSSION

Below, the Court details why summary judgment is warranted on each of Skyline's remaining claims. At bottom, however, there are four main reasons for Skyline's failure to successfully oppose summary judgment. The first three are issues with Skyline's factual presentation—or lack thereof. First, Skyline did not file a counterstatement of material facts, as required by Local Rule 56.1(c). Second, in asserting that there are disputed facts, Skyline failed to "support the assertion by … citing to particular parts of materials in the record," as required by Fed. R. Civ. P. 56(c)(1). Third, some of the assertions in the brief and Menexas's affidavit contradict what Menexas previously said at his deposition, so those assertions are insufficient to raise a genuine issue of material fact. *See Kobrand Corp. v. Abadia Retuerta S.A.*, 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012).

But Skyline wasn't sunk just by its procedural missteps. Skyline's failure to successfully oppose summary judgment appears to stem from something deeper than just a disregard for rules (though to be sure, Skyline has, throughout this litigation, repeatedly shown such a disregard). Rather, it seems that despite years of litigation, Skyline simply failed to do much discovery at all. As already discussed, Skyline didn't bother to show up to depose Legakis. Now, all that Skyline can scrape together to oppose summary judgment is an affidavit from its principal (filled with

---

[2] The conversion, breach of fiduciary duty, faithless servant, and fraudulent misrepresentation claims are brought against Legakis alone. The remaining claims are brought against Legakis and his company, Laconic Risk Solutions. As noted, the Court refers to Legakis and his company collectively as "Legakis" in this opinion.

conclusory assertions), some Skyline promotional materials, a few emails and letters, and screenshots that were apparently never produced in discovery and one of which is not described or referenced in the affidavit or brief. Skyline's procedural missteps are a symptom of its discovery failures (and perhaps its failure to investigate the facts before suing).

Finally, Skyline's fourth failure is that it fails to respond to many of the arguments that Legakis raises in his summary-judgment brief. "A plaintiff effectively concedes a defendant's arguments by [its] failure to respond to them." *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see, e.g.*, *Fuentes v. Schemmer*, 2023 WL 188739, at *14 (S.D.N.Y. Jan. 13, 2023); *Rosenberg v. LoanDepot, Inc.*, 2023 WL 1866871, at *4 (S.D.N.Y. Feb. 9, 2023); *Canas v. Whitaker*, 2019 WL 2287789, at *6 (W.D.N.Y. May 29, 2019). So by not responding to many of Legakis's arguments, Skyline has conceded them. All four of these reasons contribute to the disposition of this motion.

## I.    The Computer Fraud and Abuse Act

To show a violation of the Computer Fraud and Abuse Act (CFAA), Skyline must show that Legakis "accesse[d] a protected computer without authorization, or exceed[ed] authorized access," causing Skyline damages. 18 U.S.C. § 1030(a)(4). Legakis says that he didn't violate the CFAA because he "had authorization to access [Skyline's] computer systems." Dkt. 222 at 8. As discussed, the uncontested facts show that Menexas never responded to Legakis's email about access to Skyline's system, never told Legakis he wasn't allowed to access Skyline's system, and didn't turn off Legakis's access until the end of August.[3] Dkt. 224 ¶¶ 12–21. In addition, Kammas and Legakis had agreed that Legakis could take his clients with him when he left Skyline. *Id.* ¶ 8.

Still, in its brief, Skyline repeatedly asserts that Legakis "was no longer authorized to access its computers" after leaving Skyline. Dkt. 234 at 6. But Skyline cites nothing to back that up (in fact, this section of Skyline's brief has no record citations whatsoever), and "[t]he party opposing summary judgment may not rely simply on conclusory statements." *Goenaga*, 51 F.3d at 18; *see* Fed. R. Civ. P. 56(c)(1). Skyline also argues that Legakis accessed Skyline's system to steal its clients and that "access of information on computer systems for an improper purpose … is considered unauthorized access." Dkt. 234 at 7. But in support, Skyline cites cases that were abrogated by the Supreme Court almost three years ago. In 2021, the Court held that § 1030 "does not cover those who … have improper motives for obtaining information that is otherwise available to them." *Van Buren v. United States*, 593 U.S. 374, 378 (2021). As such, summary judgment for Legakis is warranted on Skyline's CFAA claim.

## II.   Conversion

"Conversion occurs when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that

---

[3] Skyline has produced no evidence showing that Legakis continued to access its system after that time.

person's right of possession." *Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 46 (1st Dep't 2022) (internal quotation marks omitted). "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Thyroff v. Nationwide Mut. Ins. Co.*, 360 F. App'x 179, 180 (2d Cir. 2010) (citation omitted). Legakis says that Skyline's claim for conversion fails because Legakis's initial possession of the laptop and any files on it was lawful and Skyline never demanded their return. In response, Skyline asserts that Legakis has "refused to return" the client information he took. Dkt. 234 at 10. But Skyline doesn't cite any evidence that a demand was ever made (indeed, Skyline once again fails to cite *any* evidence in this section of its brief).[4] And the uncontested facts (as well as the supporting evidence) show that Legakis explicitly asked Menexas about how to handle both the laptop and the files on it, but Menexas never responded. Dkt. 224 ¶¶ 12–20. So summary judgment is warranted on Skyline's conversion claim.[5]

### III.    Unfair Competition

"To sustain an unfair competition claim involving misappropriation, a plaintiff must establish that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011) (cleaned up). "[U]nder New York law, an unfair competition claim may be based on the misappropriation of a client list where wrongful or fraudulent tactics are employed[.]" *Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 284 (S.D.N.Y. 2016).

Legakis says Skyline's unfair competition claim fails because (among other things) there was no bad faith. Dkt. 222 at 12. By "pointing out … that there is an absence of evidence to support the nonmoving party's case," Legakis has "shift[ed] the burden to [Skyline] to come forward with specific facts showing that there is a genuine issue for trial." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (internal quotation marks omitted). Skyline blatantly fails to do so; it once again does not cite a single piece of evidence in this section of its brief. Dkt. 234 at 10–11.

---

[4] In its brief, Skyline does not argue that Legakis disposed of Skyline's property before Skyline could demand its return. *Fam. Health Mgmt.*, 171 N.Y.S.3d at 46. There is, however, a screenshot attached to Menexas's affidavit, which appears to show that Legakis deleted some files from his computer after he left Skyline. Dkt. 235-10. Because neither Skyline's brief nor Menexas's affidavit cites this screenshot or explains what files were deleted, the Court will not consider the screenshot. Fed. R. Civ. P. 56(c)(3). In addition, Skyline doesn't have any evidence that it ever asked for these deleted documents back, which is required to show conversion when the initial possession of the property was lawful. *Fam. Health Mgmt.*, 171 N.Y.S.3d at 46 (requiring disposal before demand for the return of money was made).

[5] Separately, summary judgment would be warranted on this claim because Skyline has no evidence that Legakis "interfer[ed] with [its] right of possession" of that client information, which is required to establish conversion. *Fam. Health Mgmt.*, 171 N.Y.S.3d at 46.

Moreover, Legakis has affirmatively demonstrated that there was no bad faith. It is deemed admitted that Legakis was an independent contractor and that Legakis and Kammas agreed that Legakis could take his clients with him if he ever left Skyline. Dkt. 224 ¶ 8. In addition, Legakis explicitly told Menexas in July 2020 that he was going to "start to move accounts over" and indicated his intent to take his "files" with him. *Id.* ¶ 12. Menexas never responded to that email to object. *Id.* ¶¶ 12–20. As such, the evidence shows that Legakis did not act in bad faith in taking clients or their information. *Cf. Barbagallo*, 820 F. Supp. 2d at 447 (denying motion to dismiss where employee "secretly" removed files and there was "no indication" that this was done "under a claim of right or in good faith").

## IV.    Breach of Fiduciary Duty and Faithless Servant

Although "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine," there is a "close relationship" between the two. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020). The elements of a breach-of-fiduciary-duty claim are "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Williams Trading LLC v. Wells Fargo Sec., LLC*, 553 F. App'x 33, 35 (2d Cir. 2014) (citation omitted). Meanwhile, the faithless-servant doctrine entitles a principal "to recover from his unfaithful agent any commission paid by the principal." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (citation omitted).

Legakis says that summary judgment is warranted on these claims because he wasn't Skyline's fiduciary or agent. Dkt. 222 at 12–16. "[A] fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Williams Trading*, 553 F. App'x at 35 (cleaned up). Similarly, "[a]n essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." *Pan Am. World Airways, Inc. v. Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984); *see also Quik Park W. 57, LLC v. Bridgewater Operating Corp.*, 49 N.Y.S.3d 112, 114 (1st Dep't 2017).

It is deemed admitted that Legakis was an independent contractor, not a Skyline employee. Dkt. 224 ¶ 6. Indeed, even Menexas's affidavit (to which Skyline's brief never even cites) does not dispute this. Dkt. 235 ¶ 4. And Legakis says that there's no evidence that despite being an independent contractor, he was nevertheless Skyline's agent or fiduciary. Dkt. 222 at 13–16. In fact, Menexas said in his deposition that "it was our company that was being controlled by Legakis … guiding [the company's departments as] to what to do." *Id.* at 14 (quoting Dkt. 222-5 at 176:9–14). Menexas further testified that Legakis "didn't let anybody talk to clients" and "he would basically control the flow of information and communication." Dkt. 222-5 at 182:17–24; *see also* 187:2–4, 194:24–195:2. Menexas's own testimony thus supports Legakis's argument that he was not Skyline's agent.

In response, Skyline repeatedly asserts that Legakis was an agent and fiduciary of Skyline but cites nothing. Dkt. 234 at 11–14. Skyline says that Legakis "produced business for Skyline

and shared commissions with Skyline," but that doesn't bear on whether Legakis was subject to Skyline's control. *Id.* at 11. Skyline also asserts (again without citation) that Legakis "was placing all of his surety policies through Skyline, even those for clients that were Legakis'[s] prior to joining Skyline" and that Legakis "had no independent surety business other than the work being performed for Skyline." *Id.* at 12. Again, neither of these things speaks to whether Skyline controlled Legakis, and Menexas's own testimony shows that it did not. Skyline also asserts that Legakis was "responsible for acting for the benefit of Skyline" and that "Skyline reposed its trust in Legakis" but cites nothing. *Id.* at 14. "[I]n order to defeat summary judgment, [Skyline] must come forward with evidence that would be sufficient to support a jury verdict in [its] favor." *Goenaga*, 51 F.3d at 18. Instead, Skyline comes up empty-handed.

True, in Menexas's affidavit, he repeatedly asserts that Legakis was Skyline's agent. But for one thing, "[t]he court need consider only the cited materials," and Menexas's affidavit is not cited in Skyline's brief. Fed. R. Civ. P. 56(c)(3). Even if the Court did consider the affidavit, it gets Skyline nowhere because "[a] conclusory contradiction of evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact." *Lenzi*, 2023 WL 8237484, at *2; *see Aersale Inc. v. Ibrahim*, 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013). Menexas does not point to any information showing that Legakis acted under Skyline's control, and Menexas's own deposition testimony suggests the opposite was true.

Skyline's citation to *Alevy v. Uminer*, 2007 WL 2175601 (N.Y. Sup. Ct. Mar. 23, 2007), doesn't save it either. In that case, the court allowed a breach-of-fiduciary-duty claim to survive a motion to dismiss, writing that there was "some evidence" of a fiduciary relationship even though the defendant was an independent contractor. *Id.* at *4. Although the court did not identify what that evidence was, the defendant had signed a contract stating that he would not compete with the company either while he worked there or for two years after leaving. *Id.* at *1–2. Here, there is no evidence of any non-compete agreement between Skyline and Legakis. And *Alevy* confirmed that "[f]or an independent contractor to have a fiduciary relationship to an employer, it must be shown that the relationship was akin to an employer-employee relationship." *Id.* at *4. Skyline cites no evidence of an "employer-employee relationship." *Id.*

Plus, even if Skyline had sufficient evidence to support the conclusion that Legakis was Skyline's agent or fiduciary, these claims would still fail. Skyline asserts in its brief that Legakis "began to divert customers of Skyline while still acting as an agent for Skyline." Dkt. 234 at 12. Skyline says that "[t]his is clear from the Broker of Record letters … that were prepared almost simultaneously with the notice from Legakis that he would be terminating his relationship with Skyline and from the emails he sent to the bonding companies advising them of his imminent departure." *Id.* First off, the brief does not actually cite to these letters and emails, so it's not entirely clear what Skyline is referencing. Second, the letters that Skyline seems to be referencing are all dated *after* Legakis left Skyline, as Skyline concedes. Dkt. 222-2. Skyline says that this shows that the letters were prepared before Legakis officially left. But even if that were a reasonable inference to draw, agents are allowed to take acts in preparation to compete.

Restatement (Third) of Agency § 8.04. The actual transfer of these accounts did not occur until after Legakis left Skyline. Dkt. 222-2.

As to the email that Skyline appears to be referencing (although again, the Court is left to guess), it seems to show that as of July 8th, Legakis had told someone that he was "going to venture off on his own soon." Dkt. 235-12 at 2. But this email does not give rise to a genuine issue of material fact for numerous reasons. First, it doesn't appear that this person was a client; instead, it seems that this person was someone at a bonding company. *Id.* Second, even if the person was a client, "mere advisement to one's clients of a future planned departure from one's employment would not constitute a breach of loyalty or fiduciary duties." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013); *see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011). Despite almost four years of litigation, Skyline has no evidence that Legakis *solicited* clients while he was still working with Skyline, and "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *FTC v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted). Plus, Legakis has produced declarations from his clients that he did not solicit them until July 20, 2020, or later, when he no longer worked with Skyline. Dkt. 222-3 at 4, 6, 8, 10, 12, 14, 16.

Even if a reasonable inference is that Legakis, prior to leaving Skyline, was asking clients to go with him, it is undisputed that these were Legakis's clients, and he could take them. Dkt. 224 ¶ 8. So there can be nothing faithless about Legakis's actions, nor did he breach any fiduciary duty. Legakis was not "solicit[ing] customers away from the principal" because it was agreed that these were his customers. Restatement (Third) of Agency § 8.04 cmt. c.

Finally, Skyline's contention that Legakis breached his duties or acted faithlessly by taking client information also fails. First, it is undisputed that Legakis's clients were his, and he was allowed to take them with him when he left. This suggests that Legakis was allowed to take any information necessary to serving his clients, like their contact information, with him. *See Grossman v. Schenker*, 100 N.E. 39, 40 (N.Y. 1912) ("A contract includes, not only what the parties said, but also what is necessarily to be implied from what they said."); *see also Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023) ("[T]he Court will infer that contracts include any promises which a reasonable person in the position of the promisee would be justified in understanding were included at the time the contract was made." (citation omitted)). In fact, Skyline itself describes the information that Legakis took as that "which is *necessary* for the determination of the bonding costs." Dkt. 234 at 9 (emphasis added); *see id.* at 5. This understanding is confirmed by the fact that Menexas never responded to object to Legakis's email, which indicated Legakis's intent to keep his client's files. Dkt. 224 ¶¶ 12–20. Second, it's not even clear what client information Skyline thinks that Legakis wrongfully took. Skyline's brief refers to "the compilation of client's [*sic*] financial data, contact information and bonding history" and "the way in which it is compiled" but does not cite anything or specify which clients' data Legakis allegedly took or how the data was compiled. Dkt. 234 at 10–11. In addition, Legakis explains in his brief that the client data belonged to the clients, not Skyline,

and that his clients executed Broker of Record letters, which authorized him to get their financial data. Dkt. 222 at 4–5, 10 (citing letters). Skyline does not respond to this argument, thereby conceding the point. *See Canas*, 2019 WL 2287789, at *6.

In sum, there are numerous reasons that summary judgment must be granted for Legakis on the breach-of-fiduciary-duty and faithless-servant claims.

## V.   Fraud and Fraudulent Misrepresentation

"Under New York law, the elements of a fraud claim are: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 836 (S.D.N.Y. 2016) (internal quotation marks omitted). Similarly, "[t]o state a claim for fraudulent misrepresentation under New York law, a plaintiff must show: (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance." *Quintana v. B. Braun Medical Inc.*, 2018 WL 3559091 (S.D.N.Y. July 24, 2018) (internal quotation marks omitted). The complaint alleges that Legakis committed fraud and made a fraudulent misrepresentation by inflating the amounts he charged clients for bonding services. Legakis says that even if that's true, Skyline can't sue because it wasn't damaged. Rather, Skyline benefited because it received a share of Legakis's commissions. Skyline fails to respond to that argument. So to the extent that Skyline's fraud and fraudulent-misrepresentation claims are premised on inflated invoices, summary judgment is granted to Legakis. *See Canas*, 2019 WL 2287789, at *6.

Instead of responding to Legakis's argument that Skyline was not damaged by the alleged fraud, Skyline pivots, claiming that Legakis committed fraud by taking Skyline's clients, which resulted in lost commissions. The complaint doesn't allege that as a fraud or fraudulent misrepresentation. Dkt. 132 ¶¶ 118–122, 140–145 (alleging instead that Legakis committed fraud by inflating premiums charged to clients and misrepresented the premiums). But in any event, Skyline's argument fails for the reasons discussed above: for purposes of this motion, it is uncontested that Legakis and Skyline agreed that he could take his clients with him when he left. Dkt. 224 ¶ 8. So there was no false misrepresentation or intent to defraud, and summary judgment in Legakis's favor is warranted on the fraud and fraudulent-misrepresentation claims too.

## VI.   Tortious Interference

To establish a claim for tortious interference with business relations, a plaintiff must plead: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 94 (S.D.N.Y. 2022). Legakis says that summary judgment is warranted because, among other things, he did not act "with a wrongful purpose" or "use[]

dishonest, unfair, or improper means." Dkt. 222 at 21–22. After all, it is uncontested that Legakis and Kammas agreed that Legakis could take his clients with him if he left. Dkt. 224 ¶ 8. It is also uncontested that Menexas did not respond to Legakis's email informing Menexas that he was going to take his clients with him. *Id.* ¶¶ 13–20. None of this conduct reflects interference by "wrongful" means, which the New York Court of Appeals has defined as "conduct amounting 'to a crime or an independent tort.'" *Ray v. Stockton*, 80 N.Y.S.3d 569, 572 (4th Dep't 2018) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1102 (N.Y. 2004)). And Skyline cites no evidence to show that Legakis nevertheless somehow acted wrongfully. So summary judgment is warranted on this claim.

Summary judgment is also warranted on Skyline's claim for tortious interference with contract. "Under New York law, a tortious interference claim requires a showing that a valid contract exists and that a third party with knowledge of the contract intentionally and improperly procured its breach." *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 534 (S.D.N.Y. 2013). Legakis says that Skyline has not identified any contract with which Legakis interfered. Dkt. 222 at 22–23. Skyline fails to respond to this argument (indeed, Skyline's brief does not even mention its claim for tortious interference with contract), so summary judgment is warranted. *See, e.g.*, *Tarrant v. City of Mount Vernon*, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021); *Johnston v. Town of Orangetow*n, 2013 WL 1189483, at *7 n.3 (S.D.N.Y. Mar. 22, 2013); *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012).

### VII.   Injurious Falsehood

Finally, Legakis says that there is no injurious falsehood because there was no false statement. In response, Skyline asserts that Legakis "falsely advised the clients of Skyline that he was leaving Skyline and taking the bonding brokerage business with him." Dkt. 234 at 16. Once again, Skyline fails to cite any evidence to support this assertion.

But even if it had, summary judgment would still be warranted because this statement was true. *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518 (S.D.N.Y. 2017) (listing elements of injurious falsehood). Legakis did leave Skyline, and he did take the bonding business with him. That's why this lawsuit exists. Although Skyline may think that doing so was unlawful, that does not make the statement untrue, which is, of course, required for a claim of injurious falsehood. *Id.* In addition, "an injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services." *Id.* (cleaned up). The statement that Legakis was leaving Skyline does not "denigrat[e] the quality of [Skyline's] goods or services." So summary judgment is warranted on this basis as well.

### CONCLUSION

Skyline may be upset that Legakis left Skyline and took his clients with him. But after almost four years of litigation, Skyline has failed to produce any evidence indicating that Legakis's actions were unlawful—indeed, it fails to produce almost any evidence at all. So summary judgment is warranted in Legakis's favor.

Because neither party moved for summary judgment on Legakis's counterclaims, the counterclaims will go to trial.

The Clerk of Court is directed to terminate Dkt. 221. Counsel for Skyline is directed to provide this Opinion & Order to Mr. Menexas by email on or before May 10, 2024.

SO ORDERED.

Dated: May 9, 2024
       New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge